UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1594052 ONTARIO, INC.
d/b/a TAYLOR FISH COMPANY,
and F.I.N. FISH, INC.,

                Plaintiffs,                Case No. 2:24-cv-11315

v.                                     Honorable Susan K. DeClercq
                                     United States District Judge

FRESHONE DISTRIBUTION
SERVICES, LLC, et al.,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT 21740 TROLLEY INDUSTRIAL DRIVE, LLC's MOTION TO DISMISS (ECF No. 13)

In May 2023, Plaintiffs—two companies that harvest and sell freshwater fish—were storing millions of dollars' worth of fish at a frozen-goods warehouse in Taylor, Michigan, under a contract with the warehouse operator. The warehouse operator did not own the warehouse, but merely leased it from a separate corporate entity.

On May 30, 2023, contractors hired by the warehouse owner inadvertently released ammonia gas into the warehouse while performing work on the building. The ammonia gas spoiled all of Plaintiffs' fish, rendering them unfit for human consumption.

Plaintiffs thus sued the warehouse operator for breach of contract, as well as the warehouse owner and contractors for negligence. The warehouse owner now seeks dismissal from this case. But, as explained below, Plaintiffs' negligence claim against the owner survives—though in a narrower form—so the motion to dismiss will be denied.

## I. BACKGROUND[1]

In July 2021, Defendant 21740 Trolley Industrial Drive LLC bought a warehouse in Taylor, Michigan. ECF No. 1 at PageID.5. Trolley had been formed before the purchase for "the sole purpose of owning the Warehouse." *Id.* at PageID.3.

Sometime in late 2022 or early 2023, Defendant FreshOne Distribution Services, LLC—formerly JAT Holdings, LLC[2]—entered into a lease agreement with Trolley and assumed control of the Warehouse.[3] *Id.* at PageID.5. Since then, FreshOne has operated its business as a frozen-goods warehouse from that leased

---

[1] Although Defendant FreshOne's amended crossclaim against Trolley, ECF No. 21, and amended third-party complaint, ECF No. 22, provide some additional background facts, the facts detailed below are from only Plaintiffs' May 2024 Complaint, ECF No. 1, as Civil Rule 12(b)(6) requires this Court to evaluate only the facts contained in the challenged complaint.

[2] Plaintiffs note that FreshOne's "predecessor" was "JAT Holdings, LLC," which is not a party to this case. ECF No. 1 at PageID.4–5. However, it is not clear from Plaintiffs' Complaint when and under what circumstances FreshOne became the successor of JAT Holdings, LLC. *See generally id.*

[3] Though not explicitly stated in the complaint, it appears that the Warehouse was operated by FreshOne's predecessor, JAT holdings, before FreshOne assumed control of the Warehouse. *See* ECF No. 1 at PageID.4–5 (noting that Plaintiffs stored fish at the Warehouse in 2022 under oral agreements with JAT Holdings).

space. *Id.* at PageID.2.

Throughout 2022 and 2023, JAT Holdings, maintained a business relationship with two Canadian corporations: (1) 1594052 Ontario, Inc., doing business as "Taylor Fish"; and (2) F.I.N. Fish, Inc. Both Taylor Fish and FIN Fish (collectively "Plaintiffs") are family-owned companies that harvest freshwater fish from the Great Lakes and then sell the fish to restaurants and retail stores. *Id.* at PageID.4. But between harvest and sale, Plaintiffs' fish product must be frozen and stored. So, Plaintiffs separately entered into an oral agreement with JAT Holdings to store their fish product at the Warehouse in exchange for monthly warehouse fees. *See id.* at PageID.4–5.

On April 1, 2023, FIN Fish signed a "Warehouse and Storage Services Agreement" with FreshOne. *Id.* at PageID.5; *see also* ECF No. 1-1. Under that contract's terms, FreshOne agreed to receive and inspect FIN Fish's products and packaging materials, store FIN Fish's fish product in a frozen state, and pack and ship fish product to FIN Fish's customers as requested. *See* ECF No. 1-1 at PageID.27. For its part, FIN Fish would pay FreshOne compensation according to an agreed upon chart. *See id.* at PageID.23; 25–26. Taylor Fish did not sign such a contract, but asserts that on April 1, 2023, FreshOne assumed JAT Holdings' contractual fish-storage obligations, which included FreshOne's agreement to store Taylor Fish's products "in its frozen state, to keep the product[s] safe and secure

from theft or damage, and to release the product[s]" at Taylor Fish's request. ECF No. 1 at PageID.4.

In early 2023, Trolley began a construction project on the Warehouse, "with the knowledge and consent of FreshOne." *Id.* at PageID.6. To that end, Trolley hired Great Look, LLC[4] to perform the construction work. *Id.* at PageID.6. Great Look, in turn, subcontracted with Dynamic, LLC, which specializes in installing industrial insulation. *See id.* at PageID.6, 3.

On May 30, 2022, while working on the Warehouse, Great Look and Dynamic "caused the release of ammonia gas" in the Warehouse. *Id.* at PageID.6. The gas spread through the Warehouse, contaminating the fish Plaintiffs were storing there. *Id.* Despite efforts to quarantine the fish after the gas was released, the fish were ultimately deemed unfit for sale. *Id.* Taylor Fish alleges that it lost more than $1,000,000 worth of fish, *id.* at PageID.4, while FIN Fish alleges it lost more than $2,700,000 worth of fish, *id.* at PageID.5.

In May 2024, Plaintiffs filed this lawsuit, alleging six counts against FreshOne and three separate negligence claims against Great Look, Dynamic, and Trolley. ECF No. 1 at PageID.7–19. Three months later, FreshOne brought lawsuits of its own relating to the ammonia gas incident, suing Trolley, *see* ECF Nos. 18; 21; and

---

[4] Great Look was formed in 2014 "for the purpose of remodeling single family homes," and advertises itself as a licensed roofing company. ECF No. 1 at PageID.2.

Reich Brothers LLC, an industrial real-estate firm which FreshOne alleges is the "actual or ostensible owner" of the Warehouse. ECF No. 22 at PageID.574–75; *see also* ECF No. 17.

Presently before this Court is Trolley's Motion to Dismiss Plaintiffs' negligence claim against it, ECF No. 13, which Plaintiffs oppose, ECF No. 15.

## II. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

# III. ANALYSIS

Trolley seeks dismissal of Plaintiffs' sole claim against it: Count VIII, which alleges that Trolley was negligent in (1) selecting Great Look and Dynamic to perform construction services; (2) supervising Great Look and Dynamic when the two were performing the construction; and (3) delegating and assigning work to Great Look and Dynamic that involved special risks and dangers. ECF No. 1 at PageID.16.

Trolley argues that Plaintiffs' claim is barred by the "economic loss doctrine" because "a party to a contract cannot be held liable to a non-contracting third party unless there exists a duty separate and distinct from the obligations under contract." ECF No. 13 at PageID.74–75. Plaintiffs respond that the economic loss doctrine applies *only* when there is a contract for goods—not, as here, when there is a contract for services. ECF No. 15 at PageID.121–22.

Plaintiffs are correct that the economic loss doctrine does not apply here. But the same legal concept applies to all contracts generally, under a different name: the *Hart* doctrine.[5] Thus, this Court will consider the merits of Trolley's motion to

---

[5] Trolley is not the first to conflate the economic loss doctrine and the *Hart* doctrine. Despite their distinct origins, the similarity between the two often leads to them being blended into a single rule. *See Visteon Corp. v. VarrocCorp Holding B.V.*, No. 14-12418, 2015 WL 1530333, at *2 (E.D. Mich. Mar. 31, 2015) ("There has been some confusion in Michigan law on this point, but the term 'economic loss doctrine' only applies to cases arising under the Uniform Commercial Code."); *see also*

dismiss under the *Hart* doctrine, which Trolley admits applies the same "underlying legal principles" as the economic loss doctrine. *See* ECF No. 19 at PageID.477.

## A. The *Hart* Doctrine

In *Hart v. Ludwig*, the Michigan Supreme Court "noted the distinction between the legal duty which arises by operation of a contract and the fundamental concept of a legal duty to avoid conduct which creates liability in tort." *Brock v. Consol. Biomedical Lab'ys*, 817 F.2d 24, 25 (6th Cir. 1987) (citing 79 N.W.2d 895, 898 (Mich. 1956)). "[T]he *Hart* rule directs that 'if the alleged tort claim would not exist absent the contract, and the harm claimed does not extend beyond the realm of the contract, no action in tort will lie.'" *Chemico Sys., Inc. v. Spencer*, No. 22-cv-11027, 2023 WL 1993783, at *6 (E.D. Mich. Feb. 14, 2023) (quoting *Marco Int'l, LLC v. Como-Coffee, LLC*, No. 17-cv-10502, 2018 WL 1790171, at *4 (E.D. Mich. Apr. 16, 2018)). Importantly, "the existence of a contract does not extinguish duties of care otherwise existing." *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 561 (Mich. 2011) (quoting 1 TORTS: MICHIGAN LAW AND PRACTICE § 10.18 (2d ed.)).

---

*Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, No. 10-13181, 2013 WL 27921, at *9 (E.D. Mich. Jan. 2, 2013) (noting that "'the economic loss doctrine' applies solely in U.C.C. cases" but applying the *Hart* doctrine to dismiss the plaintiff's fraud claims). But as similar as the two are, they remain distinct. *See* Vincent A. Wellman, *Assessing the Economic Loss Doctrine in Michigan: Making Sense Out of the Development of Law*, 54 WAYNE L. REV. 791, 818–25 (2008) (contrasting the economic loss doctrine and rule of *Hart v. Ludwig*).

To determine whether the *Hart* doctrine bars a tort claim, courts must ask whether the plaintiff has alleged a "violation of a legal duty separate and distinct from [a] contractual obligation." *Citizens Ins. Co. of Am. v. Pro. Temperature Heating & Air Conditioning, Inc.*, No. 300524, 2012 WL 5290289, at *5 (Mich. Ct. App. Oct. 25, 2012). "A separate and distinct duty to support a cause of action in tort can arise by statute, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, and the generally recognized common-law duty to use due care in undertakings." *Loweke*, 809 N.W.2d at 560 (citations omitted).

## B. Application of the *Hart* Doctrine

The guiding question at this stage is whether Trolley owed Plaintiffs a duty under common-law tort principles that is "separate and distinct" from any duty contemplated by a contract. *Id.* If Trolley did *not* owe Plaintiffs such a duty, *Hart* bars Plaintiff's negligence claim. But if Trolley *did* owe Plaintiffs such a duty, *Hart* would not apply at this stage. Luckily, Plaintiffs are not the first ones to bring these kinds of negligence claims against property owners who have hired construction contractors, and Michigan law provides some guidance on what duties the property owner owes to third parties present upon the land during that construction.

Recall that Plaintiffs allege Trolley failed to exercise the common-law duty of reasonable care at three points: when it (1) selected Great Look and Dynamic as

contractors to perform construction work; (2) supervised their performance of the construction work which involved "special risks and dangers"; and (3) delegated construction work to Great Look and Dynamic that involved "special risks and dangers." ECF No. 1 at PageID.16.

As to the first allegation, Michigan law does not recognize any duty requiring property owners to exercise reasonable care when selecting an independent contractor. *See Campbell v. Kovich*, 731 N.W.2d 112, 117 (Mich. Ct. App. 2006) ("Michigan recognizes no cause of action for the negligent hiring of an independent contractor." (citing *Reeves v. Kmart Corp.*, 582 N.W.2d 841, 845 (Mich. Ct. App. 1998))). Thus, because there is no separate and distinct legal duty arising under tort for Trolley's selection and hiring of Great Look and Dynamic, the *Hart* doctrine bars this theory of negligence.

As to the second and third allegations, however, Trolley *might* have owed Plaintiffs a duty under common-law negligence—depending on whether the construction work posed a special risk of harm. Generally, in Michigan, "a person who hires an independent contractor is not liable for injuries that the contractor negligently causes." *DeShambo v. Nielsen*, 684 N.W.2d 332, 335 (Mich. 2004); *see also Ghaffari v. Turner Constr. Co.*, 699 N.W.2d 687, 692 (Mich. 2005) ("[A] premises owner who hires an independent contractor is generally not liable for injuries that the contractor negligently causes."). But "[w]hen a landowner hires an

independent contractor to perform work that poses a peculiar danger or risk of harm, it is reasonable to hold the landowner liable for harm *to third parties* that results from the activity." *DeShambo*, 684 N.W.2d at 339. Indeed, this exception applies only when "the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the contract." *Dep't of Transp. v. Libey*, No. 259443, 2006 WL 2000134, at *2 (Mich. Ct. App. July 18, 2006) (citing *Schoenherr v. Stuart Frankel Dev. Co.*, 679 N.W.2d 147, 150 (Mich. Ct. App. 2003)).

Here, Plaintiffs have alleged that Trolley hired the contractors to perform work that included "special risks and dangers." ECF No. 1 at PageID.16. Thus, at this early motion-to-dismiss stage, Plaintiffs' second and third theories of negligence against Trolley may proceed to discovery—during which it can be determined whether the construction work performed was inherently dangerous and involved "a peculiar danger or risk of harm." *DeShambo*, 684 N.W.2d at 339. If the construction work performed *was* inherently dangerous, Trolley would have owed Plaintiffs a separate and distinct duty of care. But if it was not inherently dangerous, then Trolley would have owed no separate and distinct duty of care, and these theories of negligence would be barred under *Hart*. So Trolley's motion will be denied at this stage as to Plaintiffs' allegations of negligent delegation and supervision of construction work that involved special risks and dangers.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant Trolley's Motion to Dismiss, ECF No. 13, is **GRANTED IN PART** as to Plaintiffs' claim that Trolley was negligent in its *selection* of contractors.

Further, is **ORDERED** that Plaintiffs' claim that Trolley was negligent in its *selection* of contractors, *see* ECF No. 1 at PageID.16, ⁋ 88, is **DISMISSED**.

Further it is **ORDERED** that Defendant Trolley's Motion to Dismiss, ECF No. 13, is **DENIED IN PART** in all other respects.

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 13, 2025